UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 3:18CV547 |
| | : | |
| ONE PARCEL OF PROPERTY | : | |
| LOCATED AT 28 SOUTH RIDGE ROAD, | : | |
| RIDGEFIELD, CONNECTICUT, | : | |
| WITH ALL APPURTENANCES AND | : | |
| IMPROVEMENTS THEREON, | : | |
| | : | |
| Defendant. | : | April 2, 2018 |
| | : | |
| [CLAIMANTS: MICHAEL S. FLYNN, | : | |
| MARIA R. FLYNN, AND J.P. MORGAN | : | |
| CHASE BANK] | : | |

## VERIFIED COMPLAINT OF FORFEITURE

Plaintiff, United States of America, by and through its attorneys, John H. Durham, United

States Attorney for the District of Connecticut, and Julie G. Turbert, Assistant United States

Attorney, brings this complaint and alleges as follows in accordance with Rule G(2) of the

Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions:

## NATURE OF ACTION

1.      This is a civil action *in rem* brought to enforce the provision of 18 U.S.C. §

981(a)(1)(A) for the forfeiture of property involved in a financial transaction in violation of 18

U.S.C. § 1956 or 1957, or to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture

of property which constitutes or is derived from proceeds traceable to an offense constituting

"specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely, wire fraud in

violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

**THE DEFENDANT IN REM**

2.      The defendant is one parcel of property located at 28 South Ridge Road,

Ridgefield, Connecticut, with all appurtenances and improvements thereon (defendant property),

more particularly described in Exhibit A, which is attached hereto at incorporated herein by

reference.

3.      The record owners of the defendant property are Michael S. Flynn and Maria R.

Flynn.

4.      The defendant property is owner occupied residential property.

5.      The defendant property was acquired by Michael S. Flynn and Maria R. Flynn for

$1,578,000 by warranty deed, dated June 19, 2006, and recorded July 5, 2006, in Volume 830, at

Page 1206 of the Ridgefield Land Records.

6.      J.P. Morgan Chase Bank may have an interest in the property by virtue of a

mortgage in the original principal amount of $615,000, to Sterling National Bank, dated August

20, 2015, and recorded August 27, 2015, in Volume 1021, at Page 635 of the Ridgefield Land

Records. Sterling National Bank sold the note and assigned the mortgage to J.P. Morgan Chase

Bank on or about September 9, 2015.

7.      The defendant property has a fair market value of approximately $1,340,519.

8.      The defendant property has not been seized and is located in the District of

Connecticut. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a.      post notice of this action and a copy of the Complaint on the defendant

            property, and

    b.    serve notice of this action on the property owners, and any other person or entity who may claim an interest in the defendant property, along with a copy of the Complaint, and

    c.    execute a writ of entry for purposes of conducting an inspection and inventory of the property, and

    d.    file a lis pendens in the Ridgefield, Connecticut Land Records of the defendant property's status as a defendant in this in rem action.

9.    The United States will also, as provided in 19 U.S.C. §1606, appraise the defendant property when it executes a Writ of Entry.

## JURISDICTION AND VENUE

10.    Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

11.    This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

13.    The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a financial transaction in violation of 18 U.S.C. § 1956 or 1957, or pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as

defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

## RELEVANT ENTITIES

14.     M. Flynn is a Principal and 50% owner of Company-1.

15.     Company-1 is an insulation contracting company with office locations in Connecticut and New York.

16.     Company-2 is an insulation contracting company with offices in Massachusetts and Connecticut.

17.     Company-3 is an insulation contracting company located in Connecticut.

18.     Company-4 is an insulation contracting company located in Connecticut.

## SCHEME

19.     Company-1, including employees Michael Flynn ("M. Flynn") and others, colluded to rig bids and engage in fraud with Company-2, Company-3, and Company-4 in connection with the bidding and award of insulation contracts at public and private entities located throughout the Northeastern United States (including Connecticut, Massachusetts, and New York), from at least as early as October 2011 and continuing to the present.

20.     Entities, such as universities, hospitals, and other public and private entities, generally solicit competitive bids from and enter into contracts with mechanical contractors who provide, among other things, plumbing and/or HVAC (heating, ventilation and air conditioning) services on renovation or new construction projects. In turn, mechanical contractors solicit competitive bids from, and enter into subcontracts with, insulation contractors to perform the insulation portion of the work on those plumbing and/or HVAC projects. Depending on the size

of the project, the entities may solicit bids from and enter into contracts directly with the insulation contractors, or may solicit bids from and enter into contracts with a general contractor who will, in turn, solicit bids from and enter into contracts with insulation contractors.

21.    The confidentiality and independence of the bids are essential to maintaining integrity and fairness during the bidding process, and in ensuring that customers receive the best value. In some cases, bidders are required to certify that they have not engaged in anticompetitive conduct (i.e., by signing certificates of non-collusion or independent pricing).

22.    The companies involved in the bid rigging and fraud scheme received contracts through the bidding process in the tens of thousands to millions of dollars, depending on the size of the project.

23.    In connection with and in furtherance of their bid rigging and fraud scheme, the participants—including M. Flynn—used the following methods:

   a.    Shared proposals, estimates, and other bid information with and among each other, and coordinated bids to ensure that one or more inflated bids were submitted for insulation projects;

   b.    Falsely certified that the bid prices submitted for insulation contracts were independently arrived without fraud, collusion or connection of any kind with any other bidder for the same work;

   c.    Used email, text messages and other electronic means to share proposals, estimates and other bid information with competitors, and to submit false certifications of independent pricing as part of the bidding or award of insulation contracts;

      d.      Utilized shell companies to own or control competitors who also submitted bids on insulation contracts;

      e.      Made cash payoffs to other members of the conspiracy;

      f.      Moved and used proceeds from the conspiracy by transferring funds from corporate accounts into their personal accounts, retirement accounts, and mortgages.

24.      In sum and substance, M. Flynn and others rigged bids for insulation contracts, inflated the prices included on those bids, falsely certified that the bids were arrived out independently or without fraud, and enriched themselves as a result of such conduct.

## THE DEFENDANT PROPERTY

25.      Mortgage loan payments on defendant property from 2010 through 2017 can be traced to money Michael Flynn received from Company-1 and Company-4's accounts, which contained the proceeds of the fraud. Company-1 has a checking account ending in 4316 at J.P. Morgan Chase Bank that is labeled "primary account" on the bank statements (Company-1 primary account). Payments from contractors are deposited into the Company-1 primary account. Company-1 is paid by mechanical sub-contractors after the project is complete. A review of these accounts indicates that the proceeds of the bid rigging and fraud scheme are deposited into the Company-1 primary account. Company-1 has a checking account ending 9100 at J.P. Morgan Chase Bank that is labeled "payroll account" (Company-1 payroll account). The Company-1 payroll account is funded by transfers from the Company-1 primary account. Salaries are paid to employees, including Michael Flynn, from the payroll account through a payroll service. Payments from both of these accounts are deposited into a Bank of America checking account ending in 8741 in the name of Michael Flynn and his wife, Maria Flynn.

26.     Michael Flynn receives a salary from Company-1's payroll account of approximately $3,000 per week that is deposited into his Bank of America checking account # 8741. From June 16, 2010 to June 15, 2017, the amount of $1,283,348.98 was deposited from Company-1 payroll account to Michael Flynn's Bank of America checking account # 8741.

27.     Michael Flynn also receives periodic distribution from Company-1's primary account # 4316, usually between $25,000 and $100,000. These amounts are deposited into Flynn's Bank of America checking account # 8741. From June 16, 2010 to June 15, 2017, there were 29 deposits totaling $1,746,135.48 from Company-1's primary account into Michael Flynn's Bank of America checking account # 8741.

28.     Michael S. Flynn and Maria R. Flynn obtained a $1,000,000 mortgage loan from Wells Fargo Bank on July 5, 2006, for the purchase of the defendant property. This mortgage was released on January 5, 2010 after they refinanced on December 18, 2009 with Bank of America in the amount of $511,750. All of the monthly mortgage payments (after March 2014 they became bi-weekly payments) on the Bank of America mortgage were paid out of Michael Flynn's Bank of America checking account # 8741. From August 30, 2010 to August 14, 2015, there were 84 payments totaling $312,437.44.

29.     Michael S. Flynn and Maria R. Flynn obtained a home equity line of credit from Bank of America in the amount of $200,000 on May 21, 2011. During the four years the line of credit was active, they periodically withdrew funds and paid them back from Michael Flynn's Bank of America checking account # 8741. From May 12, 2011 to August 3, 2015 there were 124 payments totaling $206,477.68 paid from account #8741 for the line of credit.

30.     Michael S. Flynn and Maria R. Flynn refinanced again on August 27, 2015 with a new mortgage loan in the amount of $615,000 from Sterling National Bank. Sterling National Bank sold the loan to JP Morgan Chase on September 9, 2015. From September 30, 2015 to December 17, 2015 there were three payments totaling $20,669.02 paid to Sterling National Bank from Michael Flynn's Bank of America checking account # 8741. From December 1, 2015 to June 1, 2017 there were 19 payments totaling $127,298.02 paid to Chase Home Mortgage from Michael Flynn's Bank of America checking account # 8741.

## CONCLUSION

31.     The defendant property was involved in a transaction or attempted transaction, or traceable thereto, in violation of 18 U.S.C. §§ 1956 and 1957, or represents property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A); or that it constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America respectfully asserts that there is reasonable belief that the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) or (C); and requests

(a) that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 981(j), which permits the Court to "take any action to…preserve the availability of the property subject to civil forfeiture," the Court issue the proposed Writ of Entry submitted with this Verified Complaint of Forfeiture authorizing the United States Marshals Service, or its delegate, to enter the defendant property,

including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

(1)     for the purpose of conducting an inspection and inventory and appraisal of the defendant property, which inspection and inventory and appraisal may include still and video photography;

(2)     to be accompanied on any such occasion by any appraiser(s) selected by it to appraise the condition and value of the defendant property pursuant to 19 U.S.C. § 1606;

(3)     to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the defendant property defendant; and

(4)     to be accompanied on any such occasion by any federal, state, or local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry.

(b) that the Court decree that the forfeiture of the defendant property to the United States under 18 U.S.C. §§ 981(a)(1)(A) or (C) is confirmed, enforced, and ordered;

(c) that the Court thereafter order that the United States Marshal, or his delegate, dispose of the defendant property as provided by law; and

(d) that the Court award Plaintiff United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY


_/s/ John B. Hughes_
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U.S. ATTORNEY


_/s/ Julie G. Turbert_
JULIE G. TURBERT
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR #ct23398
157 CHURCH STREET
NEW HAVEN, CT 06510
TELEPHONE: (203) 821-3700
FAX: (203) 773-5373
EMAIL: Julie.Turbert@usdoj.gov

<u>DECLARATION</u>

I am a Special Agent of the Federal Bureau of Investigation and the case agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture, and it is true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of April, 2018.


   *Russell Frandsen*
RUSSELL FRANDSEN
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Schedule A

ALL THAT CERTAIN PIECE OR PARCEL OF LAND, together with the buildings and improvements thereon, if any, situated in the Town of Ridgefield, County of Fairfield and State of Connecticut, shown and designated as Revised Lot 1 on that certain map entitled, "Revised Lot #1/Lot #2 Map prepared for Scandia Construction and Development, Inc., Ridgefield, Connecticut", dated June 19, 1987, certified "Substantially Correct" by Henricis', New Canaan & Ridgefield, Conn., which map is on file in the office of the Town Clerk of Ridgefield as Map No. 7488, reference to which map is hereby made for a more particular description of said premises.

TOGETHER WITH a right of way over South Ridge Court as shown on Map # 7488.

Said premises are conveyed subject to:

1. Building lines, if established, building and zoning ordinances, and any and all municipal and state and federal regulations including inland wetlands regulations and provisions of any public or private law affecting said premises.

2. The effect, if any, of notations, easements and conditions as set forth on Record Map Nos. 4709 and 7175, Ridgefield Land Records.

3. An easement in favor of The Connecticut Light & Power Company dated April 4, 1986 and recorded in Volume 343 at Page 922 of the Ridgefield Land Records.

4. Taxes on the current list, which the grantees herein hereby assume and agree to pay as part consideration of this deed.



GOVERNMENT EXHIBIT

A